**Opinion filed May 9, 2019**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-17-00126-CR, 11-17-00127-CR, & 11-17-00128-CR

_____

## KEN RANDELL BLACKMER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause Nos. 16031, 16032, & 16185**

## M E M O R A N D U M   O P I N I O N

The jury convicted Ken Randell Blackmer of (1) delivery of a controlled substance in a drug-free zone in an amount of one gram or more but less than four grams, (2) delivery of a controlled substance in a drug-free zone in an amount of four grams or more but less than 200 grams, and (3) bail jumping. The jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for fifteen years, thirty years, and ten years, respectively. The trial court sentenced Appellant accordingly and ordered that the sentences for the two

delivery convictions run concurrently and ordered that the sentence for the bail-jumping conviction run consecutively to the first two.

Appellant brings two issues on appeal. Appellant contends that the trial court erred when it (1) refused to submit the defense of entrapment in its charge to the jury and (2) ordered Appellant's bail-jumping sentence to run consecutively to the sentences for delivery of a controlled substance in a drug-free zone. We affirm.

*Background Facts*

Heath Allen reached out to Detective Mike Gilbreath about helping fight against the drug users who were breaking into houses and stealing from old people around Possum Kingdom Lake. Allen thought he could be helpful because he had previously been a drug user; Allen denied currently being a methamphetamine user. A narcotics investigator testified that it is not easy for officers to make undercover narcotics buys in Palo Pinto County because it is a small community. Therefore, officers will conduct controlled buys with confidential informants that are "integrated into the criminal community in some form or fashion" from those individuals having "dealt drugs in the past to someone that's just been around it as a user."

Allen knew Appellant and Appellant's brother, Jimmy, from when they went to school together nearly thirty years ago. Allen testified that he knew Appellant and Jimmy as drug dealers and as being involved with drugs. Allen testified that he wanted to set up a deal with Appellant because, while Allen considered Appellant a friend, Appellant was "pretty f----d up" and it was time for Appellant to "grow up." Allen and Appellant were friends on Facebook, and had been for a long period of time, so Allen reached out to Appellant via Facebook Messenger on October 30, 2015, to ask if Appellant had any drugs to sell. Allen told Appellant the methamphetamine was for a friend who was a truck driver. Allen testified that, after he and Appellant worked out the details on price and quantity, Appellant volunteered

2

Jimmy to go with Allen to pick up the methamphetamine. Allen then met Jimmy before the two drove to Bubba Anguiano's house; Allen testified that Anguiano was the person who would sell the methamphetamine to them.

Upon arriving at Anguiano's home, Allen waited in the car while Jimmy went inside. After Jimmy came out of the house, Allen and Jimmy drove to pick up Jimmy's son at school before driving to Jimmy's house, where Jimmy weighed the methamphetamine. Jimmy's house was 818 feet from Houston Elementary School, well within the 1,000-foot limit of the drug-free zone around the school. According to Allen, Appellant was present at this time, and Appellant's voice could be heard on a video of the drug deal. Allen then took the methamphetamine and left Jimmy's house; Allen met with officers immediately afterward. Lab testing revealed that Allen purchased 4.80 grams net weight of methamphetamine.

Allen reached out to Appellant again on November 23, 2015, to arrange another buy of methamphetamine at Jimmy's house. This time, with Appellant present, Jimmy handed Allen a bag with one gram of methamphetamine inside, the most they could get at that time. After Allen paid Jimmy in Appellant's presence, Allen left to meet the officers. Lab testing after this buy revealed Allen purchased 1.40 grams net weight of methamphetamine.

The trial court picked juries for both Appellant's trial and Jimmy's trial on March 6, 2017. Jimmy's case went to trial first, so the trial court ordered Appellant to reappear for his trial at 9:00 a.m. on March 9, 2017. Appellant failed to appear on March 9, 2017, and was located in Carson County, Texas, on March 10, 2017.

*Analysis*

In his first issue on appeal, Appellant contends that the trial court erred when it refused to submit the defense of entrapment in its charge to the jury. Entrapment is a defense to prosecution when the defendant "engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or

3

other means likely to cause persons to commit the offense." TEX. PENAL CODE ANN. § 8.06(a) (West 2011); *see Hernandez v. State*, 161 S.W.3d 491, 497 (Tex. Crim. App. 2005). Entrapment includes both a subjective and an objective component: the defendant must show both that he was actually induced to commit the charged offense and that the persuasion was such as to cause an ordinarily law-abiding person of average resistance to commit the crime. *England v. State*, 887 S.W.2d 902, 913–14 (Tex. Crim. App. 1994). Objective inducement occurs when law enforcement tactics rise to the level of "active and overt persuasion, more than mere temptation." *Id.* at 911. However, "[c]onduct merely affording a person an opportunity to commit an offense does not constitute entrapment." PENAL § 8.06(a). The defense of entrapment, when raised, is normally a question for the jury to decide. *Hernandez*, 161 S.W.3d at 498.

A jury charge on a defensive issue is required if properly requested and if evidence from any source raises that defense. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). In determining whether the evidence raises a defense, the credibility of the evidence is not at issue; the evidence may be strong, weak, contradicted, unimpeached, or unbelievable. *Id.* When the evidence fails to raise a defensive issue, the trial court does not err in refusing the defendant's request. *Id.*

The record in this case shows that Appellant timely requested a jury charge on the defense of entrapment. Appellant asserts that Allen's work at the direction of law enforcement constituted evidence of inducement that raised the defense of entrapment. Specifically, Appellant asserts that the evidence "could have at least suggested that Allen went after Appellant merely because [Appellant] was an addict and user of methamphetamine, and it was 'time to grow up.'" Appellant further argues that the evidence supported that Appellant may not have been predisposed to distributing methamphetamine because, other than Allen's testimony, the State lacked specific evidence of Appellant's drug-selling habits.

4

The trial court determined that entrapment was not raised by the evidence and denied Appellant's request. We have reviewed the record, and we agree that the evidence failed to raise the defense of entrapment. The evidence shows that Allen and Appellant were communicating prior to the involvement of law enforcement; Appellant had been conversing with Allen via Facebook Messenger about repairing Appellant's guitar. Allen did not coerce or use any type of persuasion that would cause an ordinarily law-abiding person to commit the offense of delivery of a controlled substance in a drug-free zone. Allen testified that he did not need to "whine and beg for hours on end" to get Appellant to sell him methamphetamine; Allen merely inquired about whether Appellant could get him methamphetamine. The Texas Penal Code is clear: "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." PENAL § 8.06(a).

Nothing in the record indicates that Appellant was either subjectively or objectively induced by a law enforcement agent to commit the offense by such persuasion that would cause an ordinarily law-abiding person of average resistance to commit the crime of delivering a controlled substance in a drug-free zone. *See id.* Because no evidence of such inducement was introduced at trial, the evidence did not raise the defense of entrapment. Therefore, Appellant was not entitled to a jury instruction on the defense of entrapment. We overrule Appellant's first issue on appeal.

In his second issue, Appellant argues that the trial court erred when it ordered Appellant's sentence for bail jumping to run consecutively to the sentences for his drug-delivery convictions. Appellant was tried and convicted of the drug-delivery offenses and the bail-jumping offense in the same criminal trial. He received sentences of fifteen and thirty years for the delivery convictions and ten years for the bail-jumping conviction. The trial court ordered the sentences for the two drug delivery convictions to run concurrently and ordered the sentence for the

bail-jumping conviction to run consecutively to the first two. These circumstances, according to Appellant, when considered within the framework of Section 3.03 of the Texas Penal Code, purportedly require that all three of his sentences run concurrently. We disagree.

Per Section 3.03 of the Penal Code:

> When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently.

TEX. PENAL CODE ANN. § 3.03(a) (West Supp. 2018).[1] However, Appellant fails to recognize the existence of another statute, which provides that "[p]unishment that is increased for a conviction for an offense listed under [Texas Health and Safety Code § 481.134] may not run concurrently with punishment for a conviction under any other criminal statute." TEX. HEALTH & SAFETY CODE ANN. § 481.134(h) (West 2017). When two statutes conflict, the question of which is superior is a question of law that we consider de novo. *State v. Salinas*, 982 S.W.2d 9, 10–11 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). Further, in such situations, the Court of Criminal Appeals has acknowledged that the more specific statute must control over the more general statute. *Williams v. State*, 253 S.W.3d 673, 678 (Tex. Crim. App. 2008) ("[U]nder the Code Construction Act, we give exclusive effect of a specific provision over a more general provision only when the two irreconcilably conflict."). Because a construction where effect is given to both Penal Code Section 3.03 and Health and Safety Code Section 481.134(h) is not possible, we must decide which is superior. *See* TEX. GOV'T CODE ANN. § 311.026 (West 2013).

---

[1]Nothing in "Subsection (b)" applies to the case before us.

Here, two of Appellant's convictions involved the delivery of a controlled substance in a drug-free zone, while the other involved bail jumping, an offense that falls outside the scope of Section 481.134. When a conviction involves the delivery of controlled substances in a drug-free zone, Section 481.134(h) of the Health and Safety Code is implicated. Section 481.134(h) focuses on the trial court's lack of discretion "to allow a sentence within the scope of § 481.134(h) to run concurrently with another sentence outside the scope of § 481.134." *Newman v. State*, 268 S.W.3d 266, 269 (Tex. App.—Amarillo 2008, pet. ref'd).

We hold that the trial court did not err when it ordered the sentence for Appellant's bail-jumping conviction to run consecutively to the sentences for Appellant's convictions for delivery of a controlled substance in a drug-free zone. We overrule Appellant's second issue.

## This Court's Ruling

We affirm the judgments of the trial court.

KEITH STRETCHER

JUSTICE

May 9, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.